IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TRANSLOGIC TECHNOLOGY, INC.,       )
                                   )
                                   )  Civ. No. 99-407-PA
          Plaintiff,               )
                                   )
     v.                            )
                                   )
HITACHI, LTD.; HITACHI AMERICA,    )  ORDER
LTD.; RENESAS TECHNOLOGY           )
AMERICA, INC.,                     )
                                   )
          Defendants.              )
_____)

Jeffrey S. Love
John D. Vandenberg
Klarquist Sparkman, LLP
One World Trade Center, Suite 1600
121 S.W. Salmon Street
Portland, OR 97204-2988

     Attorneys for Plaintiff

David Axelrod
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center, Suite 1600-1800
1211 S.W. Fifth Avenue
Portland, OR 97204-3795

1  - ORDER

Nathan Lane III
David S. Elkins
Squire, Sanders & Dempsey L.L.P.
One Maritime Plaza, Third Floor
San Francisco, CA 94111-3492

Attorneys for Defendants

PANNER, Judge:

In this patent infringement action, I grant plaintiff's motion for an injunction and deny defendants' motion for a stay.

## BACKGROUND

Plaintiff's patent was issued in November 1992. In October 1997, plaintiff notified defendants that they were infringing plaintiff's patent.

After fruitless negotiations with defendants, plaintiff filed this action in March 1999. Defendants sought reexamination with the U.S. Patent and Trademark Office (PTO). Because of the pending reexamination proceedings, in September 1999, this court granted defendants' motion to stay this litigation.

In December 2002, this court lifted the stay. There was no indication when the reexamination proceedings would be completed. (An appeal of the PTO's rulings on reexamination is still pending at the agency.)

The action was assigned to this judge. Since then, despite this court's best efforts and the assistance of an outstanding special master, this litigation has followed a torturous path, a path leading finally to the jury verdict awarding damages to

plaintiff on May 6, 2005.

The special master issued reports and recommendations on claim construction, which were adopted by the court. The trial on validity was held in October 2003. Claims 16 and 17 of the patent were determined to be not invalid in light of prior art. This court denied defendants' motions for a new trial and judgment as a matter law.

After reviewing another report and recommendation by the special master, this court concluded as a matter of law that plaintiff had established infringement as to some of defendants' accused products. This court rejected as a matter of law defendants' reverse doctrine of equivalents defense.

Plaintiff chose to go to trial for damages on those products held to be infringing, while withdrawing its claims as to other allegedly infringing products. The trial on damages concluded with the jury awarding plaintiff $86.5 million. So, six years after plaintiff filed this action, and almost eight years after plaintiff notified defendants of the infringement, plaintiff has a jury verdict against defendants.

## STANDARDS

"In deciding whether a permanent injunction should issue, a court considers: (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive

relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004). Courts are authorized to enjoin patent infringement: "The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

The court has broad discretion in granting injunctive relief. Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1272 (Fed. Cir. 1999). "Because the 'right to exclude recognized in a patent is but the essence of the concept of property,' the general rule is that a permanent injunction will issue once infringement and validity have been adjudged." MercExchange, LLC v. eBay, Inc., 401 F.3d 1323, 1338 (Fed. Cir. 2005) (quoting Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1246-47 (Fed. Cir. 1989)). Only in rare cases should the court deny injunctive relief after a plaintiff has established validity and infringement. Id. (citing Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1547 (Fed. Cir. 1995)).

## DISCUSSION

Here, the balance of harms sharply favors plaintiff, justifying immediate relief. Plaintiff has established that its

patent is not invalid. After extensive study, briefing by very able attorneys, and the assistance of an excellent special master, I am satisfied that defendants have been infringing plaintiff's patent since at least 1996. Plaintiff is entitled to an injunction prohibiting further infringement by defendants.

The reexamination proceedings do not justify denying or delaying injunctive relief. I conclude that defendants have not shown that this is one of those rare cases where an injunction would be against the public interest. The public interest here favors enforcement of plaintiff's patent rights rather than allowing continued infringement.

I deny defendants' request for a stay. During this litigation, defendants strongly argued that they could eliminate infringing circuits with minimal expense and without seriously affecting the performance of their products. I conclude that enjoining further infringement will not significantly harm defendants.

I therefore issue the following injunction, with the attached claim construction, based on the jury verdicts, stipulations, and orders entered to date, finding Claims 16 and 17 of U.S. Patent No. 5,162,666 not invalid and infringed by defendants:

IT IS HEREBY ORDERED that defendants Hitachi America, Ltd., Renesas Technology America, Inc. and Hitachi, Ltd., their

officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this order, are enjoined from importing into the United States, and from making, using, offering for sale, or selling in the United States, the following microprocessors in which the Court has found circuits that meet all limitations of Claims 16 or 17, or both, of plaintiff's patent,

| **Microprocessors** |
| --- |
| SH7705 |
| SH7706 |
| SH7709S/SH7729R |
| SH7727 |
| SH7750 |
| SH7750R |
| SH7750S |
| SH7751 |
| SH7751R |
| SH7760 |
| SH7290 |
| SH7290R |
| SH7190 |
| SH7091 |
| SH7091R |
| SH7091T |
| SH7291 |
| SH7294 |

and any product containing such microprocessors, or containing one or more circuits identical to, or not colorably distinguishable from, such infringing circuits, which comprise three (Claim 16) or four (Claim 17) 2:1 TGMs coupled in series, with no intermediate outputs, with each input and control input terminal coupled to receive a signal from a different source (without regard to surrounding circuitry beyond those initial

6 - ORDER

couplings, or to inverters or buffers between the couplings), and with the 2nd and 3rd stage TGMs (Claim 16) and any 4th stage TGM (Claim 17) coupled to receive one signal from the preceding stage TGM and another signal from a circuit that is not a TGM (resulting in only one TGM per stage); and are further enjoined from otherwise directly or indirectly infringing Claims 16 and 17 of U.S. Patent No. 5,162,666, as those claims have been construed by the Court in the claim construction orders entered in this case and the attached claim construction chart.

IT IS SO ORDERED.

Dated this __12__ day of May, 2005.

Owen M. Panner
United States District Judge

The claim terms that I have interpreted are set forth in the following chart. Claim terms that are not contained in the chart are to be given their ordinary meaning.

| TERM | INTERPRETATION |
|---|---|
| "comprising" | The claims as a whole are not to be construed as excluding additional elements that may be present in a prior art reference. |
| "control signal" | A signal that is sent to the control input terminal of only one of the TGMs in the claimed multiplexer. This construction does not preclude the possibility that a control signal might be used to control another TGM outside of the claimed multiplexer." |
| "coupled to" | Connected to, directly or through one or more intervening inverters or buffers. |
| "having . . ." | The limitations defining the various stage TGM circuits are not to be construed as excluding additional elements that may be present in an accused infringement or a prior art reference. |
| "input variable" | A signal that is input to one of the input terminals of a TGM, and that of the four (claim 16) or five (claim 17) input variables, each must be capable of assuming, at any given time, either one of at least two values. |
| "multiplexer" | A circuit that accepts a plural number (N) of input signals and, based on the state of control signals that are received by the multiplexer, selects as an output a single one of the input signals. |
| "one of the fourth stage input terminals coupled to the third stage output terminal" | This means that the third stage output terminal cannot also be coupled to other circuitry such that the overall result is not a N:1 multiplexer circuit. |
| "one of the second stage input terminals coupled to the first stage output terminal" | This means that the first stage output terminal cannot also be coupled to other circuitry such that the overall result is not a N:1 multiplexer circuit. |

| | |
|---|---|
| "one of the third stage input terminals coupled to the second stage output terminal" | This means that the second stage output terminal cannot also be coupled to other circuitry such that the overall result is not a N:1 multiplexer circuit. |
| "stage" | A stage, in the context of claims 16 and 17, has only a single TGM circuit. |
| "TGM" or "TGM circuit" | A pair of transmission gates together with their associated control input and inverter, with the outputs of the transmission gates connected together. Each of the transmission gates may consist of a single pass transistor or a complementary pair of transistors. |
| "whereby ..." | These clauses are to be disregarded. |