IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| TRANSLOGIC TECHNOLOGY, INC., | ) | |
| | ) | |
| | ) | Civ. No. 99-407-PA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HITACHI, LTD., HITACHI AMERICA, | ) | OPINION |
| LTD., RENESAS TECHNOLOGY | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

JEFFREY STEWART LOVE
KEVIN M. HAYES
Klarquist Sparkman, LLP
One World Trade Center
121 SW Salmon Street
Suite 1600
Portland, OR  97204-2988

        Attorneys for Plaintiff

DAVID AXELROD
Schwabe Williamson & Wyatt, P.C.
Pacwest Center, Suite 1600-1800
1211 S.W. Fifth Avenue
Portland, OR 97204-3795

1 - OPINION

Nathan Lane III
David S. Elkins
Jose L. Martin
Squire, Sanders & Dempsey L.L.P.
One Maritime Plaza, Third Floor
San Francisco, California 94111-3492

    Attorneys for Defendants

**PANNER, J.**

Plaintiff Translogic Technology, Inc. brings this action for infringement of U.S. Patent No. 5,162,666 (the '666 Patent), for transmission gate series multiplexers used in microprocessors. The defendants are Hitachi Ltd., Hitachi America, Ltd., and Renesas Technology America, Inc.

In the first trial, the jury found that claims 16 and 17 of the '666 Patent were not anticipated, and this court found that the claims were not obvious. In the second trial, the jury found that defendants had infringed claims 16 and 17; that Hitachi, Ltd. had induced infringement; and that plaintiff was entitled to damages.

Defendants move for judgment as a matter of law on plaintiff's inducement claims as to third-parties; to reconsider the denial of defendants' previous motion for judgment as a matter of law on anticipation; and to partially reconsider claim construction. I deny defendants' motions.

## DISCUSSION

In an appeal from this court's judgment, the Federal Circuit will apply its own law to substantive patent issues. Ninth

2 - OPINION

Circuit law governs the procedural standards for defendants'
post-trial motions. Shockley v. Arcan, Inc., 248 F.3d 1349, 1358
(Fed. Cir. 2001).

## I. Judgment as a Matter of Law on Third-Party Inducement Claims

Defendants move for judgment as a matter of law on
plaintiff's claims that Hitachi, Ltd., induced Sega Enterprises
Ltd. of Japan (Sega Japan) and Casio Computer Co., Ltd. of Japan
(Casio Japan) to infringe plaintiff's patent.  Plaintiff alleges
that Sega Japan's Dreamcast product and Casio Japan's Classpad
300 calculator were imported into the United States and contain
microprocessors made by Hitachi, Ltd. that include infringing
circuits, and that Hitachi, Ltd. encouraged Sega Japan and Casio
Japan to import products containing infringing circuits.

### A.  Standards for Judgment as a Matter of Law

In analyzing a motion for judgment as a matter of law, the
court must view the evidence in the light most favorable to the
nonmoving party, and draw all reasonable inferences in favor of
that party. Horphag Research Ltd. v. Pellegrini, 337 F.3d 1036,
1040 (9th Cir. 2003), cert. denied, 540 U.S. 1111 (2004).  To
grant a motion for judgment as a matter of law, the court must
find that there is "no legally sufficient evidentiary basis for a
reasonable jury to find" in favor of the nonmoving party.  Fed.
R. Civ. P. 50(a)(1).

"Judgment as a matter of law is proper when the evidence

3 - OPINION

permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." Ostad v. Oregon Health Sciences Univ., 327 F.3d 876, 881 (9th Cir. 2003). The court may not substitute its view of the evidence for that of the jury. See Costa v. Desert Palace, Inc., 299 F.3d 838, 859 (9th Cir. 2002) (en banc), aff'd, 539 U.S. 90 (2003). The court may not determine credibility or weigh evidence. Id.

## B.  Discussion

Here, the jury was instructed that to establish inducement, plaintiff was required to prove that (1) Hitachi, Ltd., encouraged or instructed another person to perform an infringing act; (2) Hitachi, Ltd., knew of the '666 Patent; (3) Hitachi, Ltd., knew or should have known that its encouragement or instructions would likely result in the other person importing into or selling in the United States the end-product containing a microprocessor with infringing circuits; and (4) the other person infringed the '666 patent.

A patentee may use circumstantial evidence to prove intent to induce infringement, and the fact-finder may infer intent from the evidence. See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1380-81 (Fed. Cir. 2005) (citations omitted) (reversing summary judgment for the alleged inducer on an inducement claim supported by circumstantial evidence). Intent is a factual determination "particularly

4 - OPINION

within the province of the trier of fact."  Allen Organ Co. v.
Kimball Int'l, Inc., 839 F.2d 1556, 1567 (Fed. Cir. 1988) (proof
of inequitable conduct).

Here, the evidence was sufficient for a jury to find that
Hitachi, Ltd. induced Casio Japan and Sega Japan to infringe the
'666 Patent.  Although evidence of Hitachi, Ltd.'s intent was
largely circumstantial, the jury could infer intent to induce
infringement from the evidence plaintiff presented regarding
Hitachi Ltd.'s conduct, including Hitachi, Ltd.'s marketing plans
and sales meetings with Casio Japan and Sega Japan.

Regarding Sega Japan, the parties stipulated that Hitachi,
Ltd. sold more than 10 million units of SH7091, SH7091R, and
SH7091T microprocessors to Sega Japan, for $288 million; that
Hitachi, Ltd. knew that Sega Japan was using the microprocessors
in its Dreamcast product; that employees of Renesas Technology
America, Inc. met with Sega of America, Inc. employees to discuss
the use of SH-4 microprocessors and the Dreamcast product; that
Hitachi, Ltd. knew that Dreamcast products containing the SH7091,
SH7091R, and SH7091T microprocessors were imported and sold in
the United States; and that about 15% of the SH7091, SH7091R, and
SH7091T microprocessors sold by Hitachi, Ltd. to Sega Japan in
Japan for $49 million were later sold as part of Dreamcast
products in the United States.  A reasonable jury could infer
from the evidence that Hitachi, Ltd. sold infringing

microprocessors to Sega Japan and encouraged Sega Japan to use the infringing microprocessors in Dreamcast products that Hitachi, Ltd. knew would be imported into the United States, and that Sega Japan did import the Dreamcast products into the United States.

The evidence was also sufficient for the jury to find Hitachi, Ltd. liable for inducing infringement as to Casio Japan.

Because I deny defendants' motion for judgment as a matter of law on the merits, I need not address plaintiff's contention that defendants failed to raise these issues at trial.

## II. Motion to Reconsider Denial of Judgment as a Matter of Law on Anticipation

Defendants seek reconsideration of this court's order denying judgment as a matter of law on defendants' anticipation defense. At the validity trial, the jury found that claims 16 and 17 of the '666 Patent were not anticipated by prior art. I denied defendants' motion for judgment as a matter of law on anticipation.

Defendants now contend that I should adopt the most recent claim construction of the Board of Patent Appeals and Interferences (the Board) regarding the significance of intermediate outputs that are connected to circuits outside of the multiplexer circuit. Defendants argue that if the Board's claim construction is adopted, then this court must hold that three prior art references anticipate claim 16 of the '666

Patent: the Oklobzija article, Goto Japanese patent JP '531, and Goto Japanese patent JP '529.[1]

## A. The Board's Rulings Do Not Require Reconsideration

Defendants argue that the Board's opinion and claim construction "are part of the file history of the '666 patent, and so must be considered as part of the claim construction process. This portion of the file history was not available to the Special Master and the Court at the time the original claim construction order was entered."

Plaintiff filed this action in March 1999. Because of the reexamination proceedings that began in July 1999, in September 1999, this court granted defendants' motion to stay.

In December 2002, the court lifted the stay of litigation because the reexamination proceedings appeared likely to continue for years. This court determined that plaintiff deserved its day in court, despite the possibility that the reexamination proceedings might some day produce rulings that were inconsistent with this court's rulings. The Special Master reviewed the reexamination file up to that time in writing his report on claim construction. This court held the trial on validity in October 2003.

Meanwhile, reexamination proceedings proceeded at a somewhat

---

[1]     The parties are familiar with the full citations for these items of prior art.

slower pace. Cf. 35 U.S.C. § 305 (reexamination proceedings must be conducted with "special dispatch"). The PTO granted the request for reexamination in July 1999. Six years and five reexaminations later, the Board issued the claim construction on which defendants now rely.

If a district court was obliged to alter its claim construction to conform to a later claim construction issued by the Board, then there would be no reason to proceed with litigation while reexamination proceedings were pending. District courts are not, however, bound by the Board's rulings, and district courts are not required to stay litigation under these circumstances. See Vitronics Corp. v. Conceptronic, Inc., 36 F. Supp. 2d 440, 441 (D. N.H. 1997). The Federal Circuit is the proper forum to resolve conflicts between this court's claim construction and the Board's claim construction.[2]

## B. The Board's Claim Construction Is Not Persuasive

The patent terms at issue describe connections in the multiplexer circuit between the input and output terminals. One of the patent terms states, "one of the fourth stage input terminals coupled to the third stage output terminal." Two other

---

[2]    District courts apply different standards than the Board in construing patent claims. The court must construe claims in light of the statutory presumption that an issued patent is valid, while in reexamination proceedings the Board interprets patent claims as broadly as reasonably possible. See In re Etter, 756 F.2d 852, 855-59 (Fed. Cir. 1985) (en banc).

patent terms are similar except that they describe the
connections between the third stage input terminal and the second
stage output terminal, and between the second stage input
terminal and the first stage output terminal.

In construing these claims, the Special Master thoroughly
analyzed the effect of intermediate outputs:

> One could argue endlessly over fine points like whether
> a "signal" that is output to inactive circuitry
> performs any function at all, or whether outputting a
> value to circuitry that is incapable of processing that
> value can really be regarded as coupling that value to
> an input of that circuitry. In the view of the
> S[pecial] M[aster], the only rational way to approach
> this problem is by looking at each claim as a whole.
> When this is done, it is seen that the claim defines a
> multiplexer circuit, and if the TGM stages are hooked
> up as recited in the remainder of the claim, the result
> will be a N:1 multiplexer circuit.  The question then
> becomes:  Does an intermediate output branching off to
> other circuitry destroy the character of the circuit as
> an N:1 multiplexer?  Plaintiff concedes that it does
> where the other circuitry generates an output value.
> But is this so when the other circuitry does nothing
> with that intermediate output?  In the view of the SM,
> this is a classic factual question of infringement.
> Experts can undoubtedly be of assistance to the Court
> and the jury in deciding whether a particular instance
> of intermediate branching does or does not result in
> something that can be regarded as an N:1 multiplexer
> circuit.

This court adopted the Special Master's recommended

construction, and interpreted the term in part as follows:

> This means that the third stage output terminal cannot
> also be coupled to other circuitry such that the
> overall result is not a N:1 multiplexer circuit.

The Board considered this claim construction to be incomplete.

The Board added its own interpretation, which defendants now

contend this court should adopt:

> However, a multiplexer structure does not cease to become a multiplexer because of the way the intermediate and/or final TGM outputs are connected to surrounding circuitry. Therefore, we interpret this limitation to not preclude coupling the third stage output terminal to other circuitry.[3]

The Board's most recent claim construction does not require reconsideration. As the Special Master stated, "the claim limitation does not preclude intermediate outputs unless the presence of such an output would result in a circuit that is not a multiplexer. These ultimate determinations are factual questions of infringement." (Emphasis added.) I have previously explained why the jury was to resolve the dispute over intermediate outputs:

> Here, the jury was instructed that a "multiplexer" was a "circuit that accepts a plural number (N) of input signals and, based on the state of control signals that are received by the multiplexer, selects as an output a single one of the input signals." The jury was instructed that the phrase "one of the second stage input terminals coupled to the first stage output terminal" "means that the first stage output terminal cannot also be coupled to other circuitry such that the overall result is not a N:1 multiplexer circuit." The jury received analogous instructions that the second and third stage output terminals cannot also be coupled to other circuitry if the result would not be a N:1 multiplexer circuit. The jury heard conflicting expert testimony on whether the prior art circuits cited by defendants as anticipatory were N:1 multiplexer circuits.

---

[3]     The Board considered its claim construction on this issue to be dictum, stating that "[t]his difference in interpretation plays no part in the decision."

. . . .

> Similarly, plaintiff presented substantial
> evidence that the prior art adder circuits cited by
> defendants used "live" intermediate outputs that were
> necessary to their function as adder circuits. The
> jury could reasonably find that because of the live
> intermediate outputs, the adder circuits cited by
> defendants operated effectively as 4:3 or 5:4 circuits,
> rather than 4:1 or 5:1 multiplexer circuits.

The parties presented conflicting evidence on this issue at

the validity trial. Both the inventor and plaintiff's expert

testified that prior art circuits which used live intermediate

outputs did not function as N:1 multiplexers. Defendants

presented expert testimony to the contrary. The verdict

indicates that the jurors agreed with plaintiff's position.

The effect of live intermediate outputs presented a factual

issue for the jury to resolve. I do not adopt the Board's most

recent claim construction on the effect of intermediate outputs.

As another ground for reconsideration, defendants cite a

recent Federal Circuit decision on claim construction, Phillips

v. AWH Corp., 415 F.3d 1303 (Fed. Cir.) (en banc), petition for

cert. filed, 74 U.S.L.W. 3308 (U.S. Nov. 9, 2005) (No. 05-602).

In Phillips, the court criticized Texas Digital Systems, Inc. v.

Telegenix, Inc., 308 F.3d 1193 (Fed. Cir. 2002), as allowing a

court construing patent claims to adopt dictionary definitions of

the words used in a patent claim "entirely divorced from the

context of the written description." 415 F.3d at 1321.

The Special Master did discuss the Texas Digital opinion in his initial report and recommendation on claim construction. In summarizing the holding of Texas Digital, the Special Master stated, "By examining relevant dictionaries, encyclopedias and treatises to ascertain possible meanings that would have been attributed to the words of the claims by those skilled in the art, and by further utilizing the intrinsic record to select from those possible meanings the one or ones most consistent with the use of the words by the inventor, the full breadth of the limitations intended by the inventor will be more accurately determined and the improper importation of unintended limitations from the written description into the claims will be more easily avoided." However, the Special Master also noted that the specification is the "single best guide to the meaning of a disputed term," a statement that is in accord with Phillips. See 415 F.3d at 1315 (emphasizing importance of the specification).

The Special Master's claim construction was not "entirely divorced" from the written description. The Special Master thoroughly analyzed all relevant evidence in arriving at his construction of the terms of the patent claims. The Phillips opinion's partial repudiation of Texas Digital does not justify revisiting claim construction.

Because I deny defendants' motion for reconsideration on the merits, I do not address plaintiff's argument that defendants are

judicially estopped from raising these issues.

## III. **Defendants' Motion for Partial Reconsideration of Claim Construction Order and Motion for New Trial on Validity**

Defendants move for an order under Federal Rule of Civil Procedure 54(b) correcting this court's claim construction. Defendants again rely on the Board's most recent claim construction, arguing that "[t]his Court should construe the claim in the same way the [Board] construed it."

The Board interpreted the term "coupled to receive" as "terminal capable of receiving." I agree with plaintiff that the Board's construction of "coupled to receive" is not persuasive. The term "coupled" implies a connection, while the Board's construction of "coupled" as "capable of receiving" would not necessarily require an actual connection.

Defendants cite the Board's determination that "input variables" and "control signals" are not part of the claimed structure of the '666 Patent. Although the signals themselves may not be part of the claimed structure, the input terminals that receive the signals are part of the claimed structure. There was sufficient evidence at trial from which a reasonable jury could find that prior art circuits which did not allow the reception of four or five different input variables did not anticipate claims 16 or 17 of the '666 Patent. Similarly, a reasonable jury could find that prior art circuits which were not coupled to allow three or four different control input signals

13- OPINION

did not anticipate.

I deny defendants' motion for partial reconsideration. I deny plaintiff's motion to strike the motion to reconsider.

## CONCLUSION

Defendants' motions for judgment as a matter of law on inducement (#780), for reconsideration on anticipation (#815), and for partial reconsideration of claim construction (#826) are denied.

DATED this __13__ day of December, 2005.

_Owen M. Panner_
OWEN M. PANNER
U.S. DISTRICT JUDGE